**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| Eloise Jackson-Dorsey, individually and on behalf of all others similarly situated, | 1:22-cv-05863 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Conagra Brands, Inc., | |
| Defendant | Jury Trial Demanded |

1.    Conagra Brands, Inc. ("Defendant") manufactures, labels, markets, and sells microwave popcorn under the Orville Redenbacher brand represented as "Naturals" and containing "Only Real Ingredients" ("Product").



## I.    CONSUMERS VALUE FOODS LABELED "NATURAL" AND ITS VARIATIONS

2.    According to research by Mintel, consumers prefer foods which contain natural

ingredients for reasons including beliefs they are healthier, less processed, not exposed to additives, and less harmful to the environment.

3.      According to Merriam-Webster, "natural" means "existing or caused by nature; not made or caused by humankind."

4.      Consumers do not distinguish between representations describing a product or its ingredients as "natural" or "naturals."

5.      The Food and Drug Administration ("FDA") has defined natural to mean nothing artificial or synthetic has been included in, or added to a food that would not normally be expected.

6.      "Synthetic" and "artificial" are considered synonymous by laypersons, and refer to things or processes not found in nature or produced by humans.

7.      The USDA has defined an ingredient as synthetic if it is manufactured by a chemical process or by a process that chemically changes a substance extracted from a naturally occurring plant, animal, or mineral source. 7 C.F.R. § 205.2.

8.      Consumers consider minimal processing to include processes that make food edible, preserve it or safe for human consumption.

9.      Examples include smoking, roasting, freezing, drying, fermenting, and physical processes which do not fundamentally alter the raw product and only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices.

## II.    "ONLY REAL INGREDIENTS" MISLEADNG

10.     In the context of foods and beverages, consumers are increasingly seeking products which use "real" ingredients.

11.     In this context, "real" is defined as "not imitation or artificial."

12. According to one ingredient supplier, "real" ingredients are recognizable to consumers, like fruits, vegetables, whole grains, flours and seeds and "simple, uncomplicated and easy-to-pronounce."

13. One food company said that claims about "real ingredients" is a driver of naturalness perceptions.

## III. PRODUCT CONTAINS NON-NATURAL AND "NON-REAL" INGREDIENTS

14. The representation "Naturals" describes the entirety of the Product by referring to this particular product line.

15. The representations of "Naturals" and "Only Real Ingredients" are false and misleading because the ingredients on the back panel list "mixed tocopherols," a non-natural and non-"real" ingredient.

**INGREDIENTS:** WHOLE GRAIN POPPING CORN, PALM OIL, SALT, MIXED TOCOPHEROLS (VITAMIN E FOR FRESHNESS).

16. In their natural state, tocopherols are vitamin E compounds found in leafy green vegetables.

17. Mixed tocopherols are a class of chemical compounds used as chemical preservatives and recognized as synthetic by federal and identical state regulation.[1]

18. The tocopherols used are not from leafy green vegetables but extracted from vegetable oils such as soybean, rapeseed sunflower, corn and cottonseed oils.

19. Tocopherols are separated from the distillates obtained in the deodorization of

---

[1] 21 C.F.R. § 182.3890; 7 C.F.R. § 205.605(b).

vegetable oils through several steps.

20.    These include solvent extraction, chemical treatment, crystallization, complexation, and/or vacuum or molecular distillation.

21.    Tocopherols are not considered natural by consumers because the processes used to obtain and use them go beyond minimal processing, such as solvent extraction, acid hydrolysis, and chemical bleaching.

22.    Tocopherols are inconsistent with a product labeled as "naturals" because they are linked to skin problems and were reported to increase the risk of prostate cancer by 17%.

23.    Tocopherols are inconsistent with a product labeled as "naturals" because harsh and potentially toxic solvents are used to extract them from vegetable oils.

24.    These include hexane, ethanol, isopropanol alcohol, acetone, isopentatne, isohexane, trichloroethylene, and petroleum ether.

25.    The most common solvent is hexane, a neurotoxic petrochemical solvent listed as a hazardous air pollutant by the EPA, and considered "Harmful or fatal if swallowed."

26.    A 2009 study by The Cornucopia Institute found hexane residues in soybean oil, one of the largest sources for tocopherols.

27.    Many oils used in the production of tocopherols are obtained from crops which are grown with genetically modified organisms ("GMOs").

28.    GMOs are not considered natural or "real" because they involve selecting characteristics of crops in a laboratory instead of through nature, like dispersion of seeds through wind and cross-pollination.

29.    Tocopherols are not considered "real" ingredients because they are not recognized by consumers and are artificial.

30.     The statement of "naturals" is misleading because consumers do not expect the Product to contain non-natural ingredients like mixed tocopherols.

## IV.    CONLUSION

31.     The Product contains other false and misleading representations and omissions.

32.     The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

33.     As a result of the false and misleading representations and omissions, the Product is sold at a premium price, approximately no less than $2.99 for 19.74 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

34.     Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

35.     The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

36.     Plaintiff is a citizen of Illinois.

37.     Defendant is citizen of Delaware and Illinois.

38.     The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

39.     The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described in thousands of locations, including grocery stores, big box stores, warehouse club stores, drug stores, convenience stores, and online across the States covered by Plaintiff's proposed classes.

40.     Venue is in this District with assignment to the Eastern Division because Plaintiff resides in Cook County and a substantial part of the events and omissions giving rise to these claims occurred in here, including Plaintiff's purchase of the Product and awareness the labeling was false and misleading.

Parties

41.     Plaintiff Eloise Jackson-Dorsey is a citizen of Chicago, Cook County, Illinois.

42.     Defendant Conagra Brands, Inc. is a Delaware corporation with a principal place of business in Chicago, Cook County, Illinois.

43.     Defendant owns and controls the Orville Redenbacher brand of popcorn.

44.     Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at locations including Walmart, 7535 S Ashland Ave, Chicago, IL 60620, between July and August 2022, among other times.

45.     Plaintiff bought the Product because she saw and relied on "Naturals" and "Only Real Ingredients" and expected it contained ingredients which conformed to these terms, and she understood them consistent with the definitions indicated above.

46.     Plaintiff tries to consume products with natural and "real" ingredients because, like most consumers, she believes they are healthier and better for her, as opposed to synthetic, artificial and manufactured ingredients.

47.      Plaintiff knows foods must often contain ingredients other than raw agricultural materials, but in a food like popcorn, expected the ingredients were not synthetic nor created through processes which chemically and/or fundamentally transformed the starting materials.

48.     Plaintiff read and relied on the words "Naturals" and "Only Real Ingredients" to believe the Product only contained natural and real ingredients.

49. Plaintiff did not expect the Product contained non-natural and non-"real" ingredients because popcorn is a simple natural food.

50. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

51. Plaintiff bought the Product at or exceeding the above-referenced price.

52. Plaintiff paid more for the Product than she would have had she known the representations were false and misleading, as she would not have bought it or paid less.

53. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes.

54. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

55. Plaintiff is unable to rely on the labeling of not only this Product, but other similar snack products represented as containing natural and "real" ingredients, because she is unsure of whether their representations are truthful.

Class Allegations

56. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.

> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, North Carolina, Kentucky, Utah, Kansas, Idaho, Alaska, Virginia, West Virginia, and Wyoming, who purchased the Product during the statutes of limitations for each

cause of action alleged.

57.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

58.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

59.     Plaintiff is an adequate representative because her interests do not conflict with other members.

60.     No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

61.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

62.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

63.     Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.*

64.     Plaintiff incorporates by reference all preceding paragraphs.

65.     Plaintiff relied on the representations and omissions to believe the Product contained only natural and "real" ingredients.

66.     Plaintiff and class members were damaged by paying more for the Product than they would have if they knew the present facts.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

67.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive practices.

68.     The members of the Consumer Fraud Multi-State Class were harmed in the same way as Plaintiff, and may assert their consumer protection claims under the Consumer Fraud Acts of their States and/or the consumer protection statute invoked by Plaintiff.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

69.     The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained only natural and "real" ingredients.

70.     Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

71.     Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as foods which contained only natural and "real" ingredients, and developed its marketing and labeling to directly meet those needs and desires.

72.     Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained only natural and "real" ingredients.

73.     Defendant described the Product so Plaintiff believed it contained only natural and "real" ingredients, which became part of the basis of the bargain that it would conform to its

affirmations and promises.

74. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

75. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Orville Redenbacher brand of popcorn.

76. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

77. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

78. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

79. The Product did not conform to its affirmations of fact and promises.

80. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained only natural and "real" ingredients.

81. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained only natural and "real" ingredients, and relied on Defendant's skill and judgment to select or furnish such a suitable product.

<u>Negligent Misrepresentation</u>

82. Defendant had a duty to truthfully represent the Product, which it breached.

83. This duty was non-delegable, based on Defendant's position, holding itself out as

having special knowledge and experience in this area, a trusted brand known for the highest quality popcorn.

84.     The representations and omissions went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and commitments to quality that Defendant has been known for.

85.     These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

86.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

87.     Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

<u>Fraud</u>

88.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained only natural and "real" ingredients.

89.     Defendant was aware, based on internal studies, of consumer preferences for foods which contained only natural and "real" ingredients.

<u>Unjust Enrichment</u>

90.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

    **WHEREFORE**, Plaintiff prays for judgment:

    1. Declaring this a proper class action, certifying Plaintiff as representative and the

undersigned as counsel for the class;

2.  Injunctive relief to remove, correct and/or refrain from the challenged practices;

3.  Awarding monetary, statutory and/or punitive damages and interest;

4.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5.  Other and further relief as the Court deems just and proper.

Dated:   October 25, 2022

                                          Respectfully submitted,

                                          /s/Spencer Sheehan
                                          Sheehan & Associates, P.C.
                                          60 Cuttermill Rd Ste 412
                                          Great Neck NY 11021
                                          (516) 268-7080
                                          spencer@spencersheehan.com