UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Eloise Jackson-Dorsey and Lana Moskowitz, individually and on behalf of all others similarly situated, | 1:22-cv-05863 |
| Plaintiffs, | Hon. John J. Tharp, Jr. |
| - against - | First Amended Class Action Complaint |
| Conagra Brands, Inc., | Jury Trial Demanded |
| Defendant | |

1. Conagra Brands, Inc. ("Defendant") manufactures, labels, markets, and sells microwave popcorn under the Orville Redenbacher brand represented as "Naturals" and containing "Only Real Ingredients" ("Product").



**I.　CONSUMERS VALUE FOODS LABELED "NATURAL" AND ITS VARIATIONS**

2.　According to research by Mintel, consumers prefer foods which contain natural ingredients for reasons including beliefs they are healthier, less processed, not exposed to additives, and less harmful to the environment.

3.　According to Merriam-Webster, "natural" means "existing or caused by nature; not made or caused by humankind."

4.　Consumers do not distinguish between representations describing a product or its ingredients as "natural" or "naturals."

5.　The Food and Drug Administration ("FDA") has defined natural to mean nothing artificial or synthetic has been included in, or added to a food that would not normally be expected.

6.　"Synthetic" and "artificial" are considered synonymous by laypersons, and refer to things or processes not found in nature or produced by humans.

7.　The USDA has defined an ingredient as synthetic if it is manufactured by a chemical process or by a process that chemically changes a substance extracted from a naturally occurring plant, animal, or mineral source. 7 C.F.R. § 205.2.

8.　Consumers consider minimal processing to include processes that make food edible, preserve it or safe for human consumption.

9.　Examples include smoking, roasting, freezing, drying, fermenting, and physical processes which do not fundamentally alter the raw product and only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices.

**II.　"ONLY REAL INGREDIENTS" MISLEADNG**

10.　In the context of foods and beverages, consumers are increasingly seeking products

which use "real" ingredients.

11. In this context, "real" is defined as "not imitation or artificial."

12. According to one ingredient supplier, "real" ingredients are recognizable to consumers, like fruits, vegetables, whole grains, flours and seeds and "simple, uncomplicated and easy-to-pronounce."

13. One food company said that claims about "real ingredients" is a driver of naturalness perceptions.

### III. PRODUCT CONTAINS NON-NATURAL AND "NON-REAL" INGREDIENTS

14. The representation "Naturals" describes the entirety of the Product by referring to this particular product line.

15. The representations of "Naturals" and "Only Real Ingredients" are false and misleading because the ingredients on the back panel list "mixed tocopherols," a non-natural and non-"real" ingredient.

**INGREDIENTS:** WHOLE GRAIN POPPING CORN, PALM OIL, SALT, MIXED TOCOPHEROLS (VITAMIN E FOR FRESHNESS).

16. In their natural state, tocopherols are vitamin E compounds found in leafy green vegetables.

17. Mixed tocopherols are a class of chemical compounds used as chemical preservatives and recognized as synthetic by federal and identical state regulation.[1]

18. The tocopherols used are not from leafy green vegetables but extracted from

---

[1] 21 C.F.R. § 182.3890; 7 C.F.R. § 205.605(b).

3

vegetable oils such as soybean, rapeseed sunflower, corn and cottonseed oils.

19. Tocopherols are separated from the distillates obtained in the deodorization of vegetable oils through several steps.

20. These include solvent extraction, chemical treatment, crystallization, complexation, and/or vacuum or molecular distillation.

21. Tocopherols are not considered natural by consumers because the processes used to obtain and use them go beyond minimal processing, such as solvent extraction, acid hydrolysis, and chemical bleaching.

22. Tocopherols are inconsistent with a product labeled as "naturals" because they are linked to skin problems and were reported to increase the risk of prostate cancer by 17%.

23. Tocopherols are inconsistent with a product labeled as "naturals" because harsh and potentially toxic solvents are used to extract them from vegetable oils.

24. These include hexane, ethanol, isopropanol alcohol, acetone, isopentatne, isohexane, trichloroethylene, and petroleum ether.

25. The most common solvent is hexane, a neurotoxic petrochemical solvent listed as a hazardous air pollutant by the EPA, and considered "Harmful or fatal if swallowed."

26. A 2009 study by The Cornucopia Institute found hexane residues in soybean oil, one of the largest sources for tocopherols.

27. Many oils used in the production of tocopherols are obtained from crops which are grown with genetically modified organisms ("GMOs").

28. GMOs are not considered natural or "real" because they involve selecting characteristics of crops in a laboratory instead of through nature, like dispersion of seeds through wind and cross-pollination.

4

29. Tocopherols are not considered "real" ingredients because they are not recognized by consumers and are artificial.

30. The statement of "naturals" is misleading because consumers do not expect the Product to contain non-natural ingredients like mixed tocopherols.

IV. **CONLUSION**

31. The Product contains other false and misleading representations and omissions.

32. The value of the Product that Plaintiffs purchased was materially less than its value as represented by Defendant.

33. As a result of the false and misleading representations and omissions, the Product is sold at a premium price, approximately no less than $2.99 for 19.74 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

34. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

35. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

36. Plaintiff Lana Moskowitz is a citizen of Connecticut.

37. Defendant is citizen of Delaware and Illinois.

38. Plaintiff Moskowtiz is a member of the proposed class of Connecticut residents she seeks to represent, which is a different state than Defendant is a citizen of.

39. The members of the class Plaintiff Moskowitz seeks to represent are more than 100, because the Product has been sold with the representations described in thousands of locations,

including grocery stores, big box stores, warehouse club stores, drug stores, convenience stores, and online in Connecticut.

40. Venue is in this District because Defendant is a corporation subject to personal jurisdiction at the time this action was commenced and is deemed to reside in this District because it has its most significant contacts here, such as its principal place of business in Chicago, Illinois. 28 U.S.C. § 1391(d).

41. Venue is in this District because a substantial part of the events or omissions giving rise to the claims occurred here, including Defendant's decisions for the challenged representations that were applied to the Product, and Plaintiff Jackson-Dorsey's reliance, purchase, and awareness those representations were misleading.

42. Assignment is to the Eastern Division because Plaintiff Jackson-Dorsey and Defendant reside in Cook County, Illinois.

Parties

43. Plaintiff Lana Moskowitz is a citizen of Stamford, Fairfield County, Connecticut.

44. Plaintiff Eloise Jackson-Dorsey is a citizen of Chicago, Cook County, Illinois.

45. Defendant Conagra Brands, Inc. is a Delaware corporation with a principal place of business in Chicago, Cook County, Illinois.

46. Defendant owns and controls the Orville Redenbacher brand of popcorn.

47. Plaintiff Moskowitz purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at grocery stores and/or big box stores in Fairfield County, Connecticut, between November 2019 and October 2022, among other times.

48. Plaintiff Jackson-Dorsey purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at locations including Walmart, 7535 S

6

Ashland Ave, Chicago, IL 60620, between July and August 2022, among other times.

49. Plaintiffs bought the Product because they saw and relied on "Naturals" and "Only Real Ingredients" and expected it contained ingredients which conformed to these terms, and they understood them consistent with the definitions indicated above.

50. Plaintiffs try to consume products with natural and "real" ingredients because, like most consumers, they believes they are healthier and better for them, as opposed to synthetic, artificial and manufactured ingredients.

51. Plaintiffs know foods must often contain ingredients other than raw agricultural materials, but in a food like popcorn, expected the ingredients were not synthetic nor created through processes which chemically and/or fundamentally transformed the starting materials.

52. Plaintiffs read and relied on the words "Naturals" and "Only Real Ingredients" to believe the Product only contained natural and real ingredients.

53. Plaintiffs did not expect the Product contained non-natural and non-"real" ingredients because popcorn is a simple natural food.

54. Plaintiffs relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

55. Plaintiffs bought the Product at or exceeding the above-referenced price.

56. Plaintiffs paid more for the Product than they would have had they known the representations were false and misleading, as they would not have bought it or paid less.

57. Plaintiffs chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes.

7

58. Plaintiffs intend to, seek to, and will purchase the Product again when they can do so with the assurances its representations are consistent with its abilities, attributes, and/or composition.

59. Plaintiffs are unable to rely on the labeling of not only this Product, but other similar snack products represented as containing natural and "real" ingredients, because they unsure of whether their representations are truthful.

## Class Allegations

60. Plaintiffs seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Connecticut Class:** All residents of the State of Connecticut who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Illinois Class:** All residents of the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All residents of the States of North Dakota, North Carolina, Kentucky, Utah, Kansas, Idaho, Alaska, Virginia, West Virginia, and Wyoming, who purchased the Product during the statutes of limitations for each cause of action alleged.

61. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiffs and class members are entitled to damages.

62. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

63. Plaintiffs are adequate representatives because their interests do not conflict with other members.

64. No individual inquiry is necessary since the focus is only on Defendant's practices

8

and the class is definable and ascertainable.

65. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

66. Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

67. Plaintiffs seek class-wide injunctive relief because the practices continue.

Connecticut Unfair Trade Practices Act ("CUTPA") §§ 42-110a *et seq.* and Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*

68. Plaintiffs incorporate by reference all preceding paragraphs.

69. CUTPA and ICFA are similar because both prohibit deceptive representations in commerce, do not require reliance by consumers or pre-suit notice, and allow class actions.

70. CUTPA and ICFA provide attorney fees for consumers, equitable relief, restitution, multiple and punitive damages, and civil penalties for initial violations.

71. Plaintiff Moskowitz and Plaintiff Jackson-Dorsey relied on the representations and omissions to believe the Product contained only natural and "real" ingredients.

72. Plaintiffs and class members were damaged by paying more for the Product than they would have if they knew the present facts.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

73. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiffs and prohibit the use of unfair or deceptive practices.

74. The members of the Consumer Fraud Multi-State Class were harmed in the same way as Plaintiff Moskowitz and Plaintiff Jackson-Dorsey, and may assert their consumer

protection claims under the Consumer Fraud Acts of their States and/or the consumer protection statute invoked by Plaintiffs.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

75. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiffs and class members that it contained only natural and "real" ingredients.

76. Defendant directly marketed the Product to Plaintiffs through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

77. Defendant knew the product attributes that potential customers like Plaintiffs were seeking, such as foods which contained only natural and "real" ingredients, and developed its marketing and labeling to directly meet those needs and desires.

78. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiffs understood this meant it contained only natural and "real" ingredients.

79. Defendant described the Product so Plaintiffs believed it contained only natural and "real" ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

80. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

81. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Orville Redenbacher brand of popcorn.

82. Plaintiffs recently became aware of Defendant's breach of the Product's warranties.

83. Plaintiffs provide or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

84. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

85. The Product did not conform to its affirmations of fact and promises.

86. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained only natural and "real" ingredients.

87. The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiffs, who expected it contained only natural and "real" ingredients, and relied on Defendant's skill and judgment to select or furnish such a suitable product.

Negligent Misrepresentation

88. Defendant had a duty to truthfully represent the Product, which it breached.

89. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand known for the highest quality popcorn.

90. The representations and omissions went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and commitments to quality that Defendant has been known for.

91. These promises were outside of the standard representations that other companies

may make in a standard arms-length, retail context.

92. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

93. Plaintiffs reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

## Fraud

94. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained only natural and "real" ingredients.

95. Defendant was aware, based on internal studies, of consumer preferences for foods which contained only natural and "real" ingredients.

## Unjust Enrichment

96. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying Plaintiff Moskowitz as representative of the Connecticut Class, Plaintiff Jackson-Dorsey as representative of the Illinois Class, and the undersigned as counsel for the class;

2. Injunctive relief to remove, correct and/or refrain from the challenged practices;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable fees for Plaintiffs' attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated: November 19, 2022

                                                    Respectfully submitted,

                                                    /s/Spencer Sheehan
                                                    Sheehan & Associates, P.C.
                                                    60 Cuttermill Rd Ste 412
                                                    Great Neck NY 11021
                                                    (516) 268-7080
                                                    spencer@spencersheehan.com